IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES MASTERSON, REBECCA
TENGES, and THE MASTERSON
METHOD, INC.,

      Plaintiffs,

    v.                        Case No. 26-cv-365-wmc

DAN HERETH AND JOSH KAUL,

      Defendants.

## RESPONSE TO PLAINTIFFS' STATEMENT OF PROPOSED FACTS

1. Plaintiff James ("Jim") Masterson is an expert on equine performance bodywork. Compl. ¶ 19.

   **Response: not disputed**

2. Jim has worked with horses for decades. Compl. ¶ 20.

   **Response: not disputed**

3. Jim started his journey by working at a stable for equestrian horses. Compl. ¶ 21.

   **Response: not disputed**

4. Equestrian horses are athletes, and they need physical recovery just like any other athlete. Compl. ¶ 22.

   **Response: not disputed**

5. As Jim observed different practitioners work on horses, he noticed that those horses would respond with subtle physical cues. Jim was determined to develop techniques that would be responsive to those cues and so allow the horses to relieve tension. Compl. ¶ 23.

   **Response: not disputed**

6. The resulting system of bodywork was centered around working with the horse to relieve tension, rather than simply working on the horse, in contrast to other forms of bodywork such as massage, which involve more physical pressure on the horse. And so, the "Masterson Method" was born. Compl. ¶ 24.

   **Response: not disputed**

7. Jim refined his signature method in the performance-driven environment of the equestrian circuit. Word of mouth spread and his clientele grew. Compl. ¶ 25.

   **Response: not disputed**

8. Soon, Jim was using his signature method on horses competing in top competitions. Compl. ¶ 26.

   **Response: not disputed**

9. In 2006, Jim worked with the U.S. Equestrian Endurance Team at the World Equestrian Games in Germany. Over the next eight years, Jim

would continue to work with the U.S. Equestrian Team at multiple international competitions, from Malaysia to France. Compl. ¶ 27.

**Response: not disputed**

10.     His cornerstone offering is a weekend seminar where students practice basic Masterson Method techniques on horses. Compl. ¶ 29.

**Response: not disputed**

11.     Since he started teaching the Masterson Method, thousands of people—owners, therapists, trainers, or just plain horse enthusiasts—have attended his cornerstone weekend seminar. Compl. ¶ 30. Jim and instructors like Becky have offered Jim's cornerstone weekend seminar around the world, including in Canda, Europe, Asia, Australia, and New Zealand. Compl. ¶¶ 30, 113. In 2025 hundreds of students attended over 50 courses that Jim's school offered in the United States. Compl. ¶ 35.

**Response: not disputed**

12.     Multiple private professional organizations, including the National Certification Board for Therapeutic Massage and Bodywork, have endorsed Jim's cornerstone weekend seminar to satisfy continuing education requirements. Compl. ¶ 31.

**Response: not disputed**

13.     In 2011, Jim published a book, Beyond Horse Massage, detailing his method. Since then, Beyond Horse Massage has been translated into multiple languages. Compl. ¶ 32.

**Response: not disputed**

14.     Jim's work has been the subject of an award-winning documentary film. Compl. ¶ 33.

**Response: not disputed**

15.     Over the years, Jim's school has expanded its offerings. For example, there is now a course tailored to teaching equine therapists how to deploy basic Masterson Method techniques into their practice. Compl. ¶ 34.

**Response: not disputed**

16.     Jim's school also offers certifications for people who want to become proficient in the Masterson Method. Compl. ¶ 37.

**Response: not disputed**

17.     Jim's flagship certification program is the Masterson Method Certified Practitioner program (the "Certified Practitioner" program). Compl. ¶ 38.

**Response: not disputed**

18.     The Certified Practitioner program requires multiple additional courses, including an advanced five-day course. It also requires thirty

fieldwork sessions where trainees apply the Masterson Method to local horses. Compl. ¶ 40.

**Response: not disputed**

19.     The Certified Practitioner program requires multiple additional courses, including an advanced five-day course. It also requires thirty fieldwork sessions where trainees apply the Masterson Method to local horses. Compl. ¶ 40.

**Response: not disputed, with the addition that the weekend course is also required for the certified practitioner program. (Hipsman Dec. Ex. E.)**

20.     Jim's school advises prospective students that they should expect to take between 9 months and 2 years to complete the Certified Practitioner program in its entirety. Compl. ¶ 41.

**Response: not disputed**

21.     Students can take the additional courses required to become a Certified Practitioner—like Jim's advanced five-day course—without seeking to become Certified Practitioners. Many students who take the advanced five-day course have no intention of trying to become Certified Practitioners. Compl. ¶ 42.

**Response: not disputed**

22.     People become Certified Practitioners for a variety of reasons. Some are equine professionals (e.g., trainers, practitioners of traditional horse massage, or veterinarians) who are looking to add another skill to their toolkit. Others may only be looking to care for their own horses. Compl. ¶ 43.

**Response: not disputed.**

23.     Jim's advanced five-day course is approved for continuing education credits by the National Certification Board for Therapeutic Massage and Bodywork. Compl. ¶ 44.

**Response: not disputed.**

24.     Although many of the students in the Certified Practitioner program plan to use Jim's signature methods professionally, Jim's marketing focuses on the effectiveness of his method, not on career opportunities that studying the method might open up. Compl. ¶ 45.

**Response: disputed in part. Defendants do not dispute that Jim's current marketing focuses on the effectiveness of his method, not on career opportunities that studying the method might open up. Defendants dispute that this was the case in March and April 2023. According to the Wayback Machine internet archives, Masterson's website included the following statements:**

- **"The Practitioner Certification program attracts horse-people for a variety of reasons:"**
    - **"to develop skills as a professional equine bodyworker"**
    - **"to have a vocation where you're giving back to the horse" (Hipsman Dec. Ex. A.)**
- **"For those who want to start their own Masterson Method equine bodywork business, the Fieldwork and Masterson Method Certified Practitioner Program are your next step after the Advanced 5-day Course." (Hipsman Dec. Ex. B.)**
- **"Fieldwork Students will demonstrate their proficiency and learn new techniques to complete their certification and launch their Masterson Method equine bodywork business." (Hipsman Dec. Ex. B.)**
- **"Only Masterson Method Certified Practitioners may use the Masterson Method® name and logo in their bodywork business." (Hipsman Dec. Ex. B.)**

25.    For his part, Jim's dream is that every horse on the planet experiences his signature techniques at least once. Compl. ¶ 46.

**Response: not disputed**

7

26.    As the reach and scope of Jim's school has expanded, Jim has trained others to serve as instructors in his method. Jim selects those instructors from the pool of existing Certified Practitioners. Compl. ¶ 47

**Response: not disputed**

27.    Instructors have some leeway in coordinating the logistics of courses with Jim's school, and they may have their own style of teaching. But at the end of the day, they teach the course materials and curricula provided by Jim's school. Compl. ¶ 48.

**Response: not disputed**.

28.    Plaintiff Becky Tenges is one of those instructors. Compl. ¶¶ 53, 5.

**Response: not disputed**

29.    In March 2023, Becky was preparing to teach Jim's advanced five-day course in Wisconsin. Compl. ¶ 58.

**Response: not disputed**

30.    Jim's school had offered courses in Wisconsin before without issue. Compl. ¶ 59.

**Response: not disputed, with the addition that the department does not have the resources to monitor program compliance of all private schools in Wisconsin. (Gage Dec. ¶ 14.)**

31.     But on March 22, 2023, Colleen Uhlenkamp, a School Administration Consultant with the Department, contacted Jim's school by email. Compl. ¶ 60; Compl. Ex. A.

**Response: not disputed**

32.     Uhlenkamp insinuated that Jim's school would need to undergo EAP's approval process—a process that Uhlenkamp described as "rigorous by design"—if the advanced five-day course was to be offered in Wisconsin. Compl. ¶ 61; Compl. Ex. A.

**Response: not disputed**

33.     During that correspondence, in an email on April 7, 2023, Uhlenkamp stated that Jim's school would "NEED to discontinue advertising for, recruiting, enrolling, or attempting to offer any training to Wisconsin residents." Uhlenkamp threatened to refer Jim's school to the Attorney General; she warned Megan that the Attorney General could impose $500-per-day fines on Jim's school for violations of the Act. Compl. ¶ 63; Compl. Ex. B.

**Response: disputed in part. Defendants do not dispute that Uhlenkamp stated in an email that Jim's school would "NEED to discontinue advertising for, recruiting, enrolling, or attempting to offer any training to Wisconsin residents." Defendants add that this instruction applied only until the**

**initial status of Masterson's school was resolved. (Hipsman Dec. Ex. I) Defendants also dispute that Uhlenkamp "threatened" to refer Jim's school to the Attorney General or warned that the Attorney General could impose $500-per-day fines on Jim's school for violations of the Act. Uhlenkamp stated that if the class continued, she "will be required by law to report your institution to State legal counsel and under Wis. Stat. § 440.52(12)(d) the State may fine the school $550 per day every day you have been operating out of compliance in Wisconsin." (Hipsman Dec. Ex. I.) Her email did not refer to the Attorney General, and it is not accurate to characterize her articulation of her legal duties and the law as a threat.**

34.     Jim's school removed advertising for all Wisconsin courses from Jim's website. Compl. ¶ 64.

        **Response: not disputed**

35.     Jim informed Uhlenkamp that the Wisconsin courses had been taken off the website. He further maintained that Masterson Method courses are exempt from the Act because the courses are "avocational or recreational in nature" and do not lead "to a vocational objective." Wis. Stat. § 440.52(1)(e)(4). Jim explained that his courses work to enhance horse-owners or equine professionals' relationships with their horses.

10

And Jim also explained that even his certification process works to serve as an acknowledgement that the participants have demonstrated proficiency in Masterson Method techniques. Compl. ¶ 66; Compl. Ex. C

**Response: not disputed**

36.    Jim concluded by inviting Uhlenkamp to an upcoming demonstration at the Midwest Horse Fair in Madison, Wisconsin. Compl. ¶ 67; Compl. Ex. C.

**Response: not disputed**

37.    Uhlenkamp did not budge. Instead, in an email sent the next day, she insisted that the advanced five-day course does not meet the avocational exception because the course is necessary for certification as a Certified Practitioner. Uhlenkamp stated that Jim was "invited to send [her] all documentation [he has] regarding program curriculum, student handbook, training materials, etc. to be further reviewed." Compl. ¶ 68; Compl. Ex. C.

**Response: disputed in part. Defendants dispute the narrative argument that "Uhlenkamp did not budge." Rather, Uhlenkamp took the position the Advanced 5-Day Course did not meet the avocational exemption. Defendants add that she explained: "I disagree with your assessment that the Advanced 5-Day Course that you intend to offer in Wisconsin does not have**

**an occupational objective. Your own website states that it is a required course for those interested in[] becoming a Masterson Method Certified Practitioner." (Hipsman Dec. Ex. J.) Defendants do not dispute that Uhlenkamp invited Masteron "to send [her] all documentation [he has] regarding program curriculum, student handbook, training materials, etc. to be further reviewed." (Hipsman Dec. Ex. J.)**

38.     Uhlenkamp concluded her message by again threatening Jim's school with $500-per-day fines. Compl. ¶ 69; Compl. Ex. C.

**Response: disputed. Uhlenkamp did not "threaten" Masterson and instead stated the law: "While you consider your next steps, please know that Wis. Stat. § 440.52(12)(d) authorizes the EAP to fine a school $500 per day for every day they have been operating out of compliance." (Hipsman Dec. Ex. J.)**

39.     Jim wrote back on April 12 to seek clarification. He first reiterated to Uhlenkamp that advertising for all Wisconsin courses had been removed from the website. But while Uhlenkamp had taken issue with the advanced five-day course, Jim wondered whether his school would be able to offer more basic courses like his cornerstone weekend seminar. Compl. ¶ 70; Compl. Ex. C.

**Response: not disputed**

12

40.     Uhlenkamp replied, rephrasing her earlier request for additional documents as a demand: Jim was "still required to first send [Uhlenkamp] all documentation [he has] regarding program curriculum, student handbook, training materials, etc. for a compliance review." Compl. ¶ 71; Compl. Ex. C.

**Response: disputed in part. Defendants do not that dispute Uhlenkamp told Masterson that he was "still required to first send [her] all documentation [he had] regarding program curriculum, student handbook, training materials, etc. for a compliance review." Defendants dispute characterizing this as a "rephrased demand."**

41.     Two days later, Jim sent the instructor outline and student workbook for his cornerstone weekend seminar. He also pointed out that both the cornerstone weekend seminar and the advanced five-day course are both approved as continuing education courses by the National Certification Board for Therapeutic Massage and Bodywork. Compl. ¶ 72; Compl. Ex. C.

**Response: not disputed**

42.     On April 21, 2023, Uhlenkamp determined that Masterson Method courses are not avocational or recreational in nature. Thus, she

13

concluded, Jim's school must undergo EAP approval if Masterson Method courses are to be taught in Wisconsin. Compl. ¶ 73; Compl. Ex.

**Response: not disputed**

43.     The Act exempts schools whose courses are primarily "avocational or recreational in nature" and do not lead "to a vocational objective." Wis. Stat. § 440.52(1)(e)(4).

**Response: not disputed**

44.     But Jim's school offers both avocational and vocational courses, so that exception does not apply. Compl. ¶ 77.

**Response: disputed. Defendants dispute that Masterson's school currently offers vocational and avocational courses. Based on Masterson's current website materials only, it does not appear that Masterson offers vocational instruction at this time. (Hipsman Dec. Exs. E–G.)**

45.     That makes Jim's school subject to the Act. Compl. ¶ 78.

**Response: disputed. Defendants dispute that Masterson's school currently offers vocational and avocational courses. Based on Masterson's current website  materials, it does not appear that Masterson offers vocational instruction at this time. (Hipsman Dec., Exs. E–G.) A private career school that does not offer vocational instruction is not subject to the EAP.**

14

46.     The Act is incredibly burdensome. See Wis. Stat. § 440.52; Wis. Admin. Code SPS § 401.01, et seq.; Compl. Ex. D at ¶¶ 4-14; see also Compl. Exs. E-N.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc. v. BJM Hospice, L.L.C.***, No. 11-CV-537-BBC, 2011 WL 13244559, at \*1 (W.D. Wis. Sept. 27, 2011);** *see also Wolff v. Kaul***, No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 n.1 (W.D. Wis. Dec. 4, 2025) (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting** *Rivera v. Guevara***, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018))).**

47.     The Act imposes burdens so extreme that compliance is infeasible for Jim's school. Compl. ¶ 118.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.***, No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff***, No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary**

judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting *Rivera*, 319 F. Supp. 3d at 1018)).

48.    Compliance with the Act would require Jim's school to waste substantial time and resources preparing to undergo the Department's months-long initial approval process. Compl. ¶ 119.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded. *HospiceCare, Inc.*, No. 11-cv-537-bbc, 2011 WL 13244559, at \*1; *see also Wolff*, No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting *Rivera*, 319 F. Supp. 3d at 1018)).**

49.    Compliance with the Act would require Jim's school to waste substantial time and resources preparing market studies, strategic plans, and "SWOT" analyses. Jim's school has operated just fine— indeed, it has grown substantially—without any of these things. Compl. ¶ 120; see also Compl. Ex. D at ¶ 6; Compl. Ex. E.

16

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.*, **No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff*, **No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all") (quoting** *Rivera*, **319 F. Supp. 3d at 1018.**

50.    Compliance with the Act would require Jim's school to waste substantial time and resources overhauling the policies, procedures, and basic contracts it already uses. Compl. ¶ 121.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.*, **No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff*, **No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all") (quoting** *Rivera*, **319 F. Supp. 3d at 1018.**

17

51.   Compliance with the Act would subject Jim's courses—which teach his signature method—to be subject to the upvote or downvote of Department bureaucrats who, on information and belief, are ill-qualified to opine on performance animal care generally, let alone Jim's signature method specifically. Those bureaucrats are, on information and belief, similarly ill-equipped to opine on the credentials of Jim's instructors, who Jim has selected based on an assessment of their proficiency in his signature method. Compl. ¶ 127.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.***, No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff***, No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting** *Rivera***, 319 F. Supp. 3d at 1018)).**

52.   But for the Act, Plaintiffs would teach Wisconsin residents the full range of courses offered by Jim's school without fear of government intrusion or retribution at the hands of Defendants. Compl. ¶ 130.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.*, **No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff*, **No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting** *Rivera*, **319 F. Supp. 3d at 1018)).**

53.     Presently, however, Plaintiffs' protected speech is chilled by the credible threat of monetary or criminal sanctions. Compl. ¶ 131.

**Response: dispute. This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded.** *HospiceCare, Inc.*, **No. 11-cv-537-bbc, 2011 WL 13244559, at \*1;** *see also Wolff*, **No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting** *Rivera*, **319 F. Supp. 3d at 1018)).**

54.     If this Court enjoins Defendants from implementing and enforcing the Act, Plaintiffs will be relieved of this credible threat of sanctions, and they would no longer fear government intrusion or retribution at the hands of Defendants. They would be free to teach—and would resume teaching without delay—the full range of courses offered by Jim's school to willing students in Wisconsin. Compl. ¶ 132.

**Response: dispute This is a legal argument and conclusion, not a fact. Such assertions in a party's proposed facts for injunction purposes have no evidentiary value and may be disregarded. *HospiceCare, Inc.*, No. 11-cv-537-bbc, 2011 WL 13244559, at \*1; *see also Wolff*, No. 24-cv-176-wmc, 2025 WL 3485591, at \*1 (disregarding proposed facts at summary judgment that "make legal arguments and assert legal conclusions, which are not factual statements at all" (quoting *Rivera*, 319 F. Supp. 3d at 1018)). Further, Masterson Method is free to teach in Wisconsin without EAP approval if it offers recreational and avocational instruction. (Gage Dec. ¶¶ 33–34.)**

Dated this 19th day of June 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Faye B. Hipsman
FAYE B. HIPSMAN
Assistant Attorney General
State Bar #1123933

CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

FRANCES REYNOLDS COLBERT
Assistant Attorney General
State Bar #1050435

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9487 (FBH)
(608) 957-5218 (CG)
(608) 266-9226 (FRC)
(608) 294-2907 (Fax)
hipsmanfb@doj.state.wi.us
charlie.gibson@wisdoj.gov
frances.colbert@wisdoj.gov

21