IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES MASTERSON, *et al.*,

    Plaintiffs,

    v.                       Case No. 26-CV-365

DAN HERETH, *et al.*,

    Defendants.

## DECLARATION OF JOAN R. GAGE

I, Joan R. Gage, pursuant to 28, § U.S.C. § 1746, declare as follows:

1. I make this declaration based on my personal knowledge and upon my review of the records maintained in the ordinary course of business and in response to Plaintiffs' motion for a preliminary injunction.

2. I am currently employed as a Program Manager for the Department of Safety and Professional Services. I am responsible for the management of the Education Approval Program (EAP). Additionally, I oversee the administration of the Office of Education and Examinations (OEE) which is responsible for technical support of regulatory boards, pre-licensure education, continuing education, and examinations for over 250 business,

health and skill trade credentials. I have been in this position since July 27, 2015.

## The Department

3.    The Department is responsible for ensuring safe and competent practice of licensed professionals in Wisconsin. The mission of the Department is to promote economic growth and stability while protecting the public health and welfare of citizens of Wisconsin as authorized by statute.

4.    The Department licenses and regulates more than 200 types of credentials; administers and enforces laws to assure safe and sanitary conditions in public and private buildings; supports nearly 100 boards, councils, and advisory committees that conduct professional oversight; provides administrative services to the state occupational regulatory authorities responsible for regulation of occupations and offers policy assistance in evaluating and establishing new professional licensing programs, creating routine procedures for legal proceedings, and adjusting policies in response to public needs.

## The Educational Approval Program

5.    The Department is responsible for administering the Educational Approval Program(EAP) as set forth in Wis. Stat. § 440.52 and Wis. Admin. Code Ch. 400 *et seq*.

6. The EAP exists to protect consumers and ensure education and training programs meet quality standards. It is statutorily designed to "protect the general public by inspecting and approving private trade, correspondence, business, and technical schools doing business within this state, whether located within or outside this state, changes of ownership or control of the schools, teaching locations used by the schools, and courses of instruction offered by the schools and regulate the soliciting of students for correspondence or classroom courses and courses of instruction offered by the schools." Wis. Stat. § 440.52(2).

7. The EAP protects consumers in multiple ways. For example, approved schools are required to permanently retain student transcripts and keep student records for a minimum of six years from the date of graduation or last date of attendance. This ensures that students have continued access to their transcripts, records, and credentials for future educational and/or professional needs.

8. Schools must provide documentation that applicable fire, safety, and health codes are met at schools and teaching locations.

9. A school will also need to show it is fiscally sound to ensure the school has the resources to deliver the education or training being offered.

10. Additionally, to financially protect students, the EAP requires each school to provide and maintain a surety bond as a condition of approval.

There is also a student protection fund available if other financial protection mechanisms are insufficient. These policies are in place to ensure that students will be reimbursed for prepaid tuition if the school unexpectedly closes, commits fraud, or otherwise fails to deliver services.

11. Schools are required to have procedures in place to evaluate their educational programs, improve instruction and review overall operations.

12. Schools must also make students aware of their complaint process and provide the ability to file a complaint with the EAP.

13. The program provides critical consumer protections to Wisconsin students attending private, technical, and trade schools to advance their careers.

14. The EAP does not have the resources to monitor program compliance of all private schools in Wisconsin.

**The EAP approval process**

15. Schools seeking approval must submit application materials as set forth in Wis. Admin. Code SPS § 404.03(1)(a)-(n). The application must also be accompanied by a school catalog or bulletin, as defined in Wis. Admin. Code SPS § 404.03(2).

16. Once a school submits its application materials, the EAP is statutorily permitted to take up to 70 days to make a determination, but in reality, the EAP usually completes a determination within 30 days. Schools

4

are encouraged to notify program staff if the school must be approved by a certain date and the Program will seek to meet that timeline.

17. EAP staff work with designated school officials throughout the application process. The designated school official will be kept informed about the school's application status. If anything fails to meet EAP requirements, information is missing or needs to be changed; the school will be notified by email.

18. The department estimates that a diligent and competent school administrator could complete the school catalogue and application process in approximately ten hours. To make the application process easier for schools, the EAP offers the assistance of consultants to answer questions, provide examples, and facilitate completion of application materials overall.

19. The EAP applies to "any private trade, correspondence, business, or technical school" doing business within Wisconsin that are not otherwise exempt under Wis. Stat. § 440.52(1)(e).

20. There is an exception for "[s]chools primarily offering instruction avocational or recreational in nature and not leading to a vocational objective." Wis. Stat. § 440.52(1)(e)4.

21. The EAP considers whether schools meet the avocational exception on a case-by-case basis. The EAP considers a school that offers instruction that is pursued for personal enjoyment, recreation, or as a hobby to be avocational.

The EAP considers a school that offers instruction that prepares individuals for occupational, professional, or career purposes to be vocational.

22. The EAP does not determine whether schools meet the avocational exemption based on the subject or topic taught. Regardless of subject, the EAP looks at whether the school is offering instruction that leads to vocational or professional objectives.

23. On other words, the EAP's vocational/avocation determination is not dependent on the subject matter of instruction. The avocational exemption applies the same way no matter what subject is taught.

24. The EAP determines whether schools meet the avocational exception based on any materials the school shares or submits to EAP, and on publicly available materials such as websites, advertisements, and social media, and marketing materials. The EAP looks at how the school holds itself out to consumers, including on websites and other promotional materials, to see whether it advertises a course of instructions or classes leading to a career or professional objective.

25. Many schools do not view program approval as overly burdensome, but rather as a benefit that builds consumer confidence.

26. In some cases, schools want to be considered vocational and seek EAP coverage, but after the approval application process, the EAP determines that the school is avocational and exempt from the EAP.

27. Other times the EAP has made a preliminary determination that a school is vocational but through the application process, the EAP determines that the school is in fact avocational and exempt from the EAP.

28. Wisconsin Stat. § 440.52(10)(a) limits EAP school approval to one year, thus requiring schools to have to submit annual renewal applications. The renewal application includes financial statements and other updated materials (to contact information, profile, student cohort information, student tuition information, pending legal action against the school, among other things). The EAP reviews the school's financial situation, student outcome data and surety bond amounts during the renewal cycle. The EAP may visit approved schools as-needed in response into a complaint against a school.

29. Currently, there are 149 existing schools with active EAP approval and subject to EAP regulation. So far in 2026, the EAP has approved 5 new schools.

30. The department has received complaints about the following problems that the EAP is designed to protect against: deceptive advertising, discrimination and discriminatory expulsion, failure to reimburse tuition, quality of instruction, program quality and content, quality of facilities. Access to books, labs, and practicums. Students regularly contact the department to obtain transcripts and records when a school they attended in the past has closed. Students request transcripts more frequently than any other

educational record; they are often needed to apply to jobs and other educational programs.

**Masterson Method and EAP**

31. I have reviewed Masterson Method's current website, www.mastersonmethod.com.

32. The practitioner certification is described as a program that enables students to have " the skills and knowledge that will allow you truly make a difference in the horse's performance, comfort, well-being, and relationship with its human partner." Masterson Method's website does not currently market or advertise the practitioner certification program or any of its other courses as preparation for a  vocation, the profession of equine bodyworker, launching an equine bodywork business, or any other career objective. (Hipsman Dec. Exs. E–G.)

33.  There is one bullet point on the website that states that horse-people are attracted to the program "as continuing education for equine professionals or people wishing to pursue careers in equine or equestrian fields." (Hipsman Dec. Ex. E.) The EAP does not regulate continuing education or view a continuing-education provider as a private career school.

34. Based on Masterson Method's current website alone, it appears that Masterson Method offers avocational instruction not leading to a vocational objective. This does not take into account any other Masterson

Method materials, such as internal course-related documents or promotional materials and advertising that are not on Masterson's website.

35. Masterson may teach his equine method in Wisconsin without EAP approval so long as he offers recreational and avocational instruction not leading to a vocational objective.

Signed on this 18th day of June 2026, in Madison, Wisconsin.

<u>Joan R. Gage</u>

JOAN R. GAGE